UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



```
                                    )
JOHN A and JANE A, for themselves   )
and on behalf of their minor children, )
E.B. and Q.N.; RICHARD B and MARY   )
B, for themselves and on behalf     )
of their minor children, A.B., D.B., )
and J.S.; and JAMES C and MARIA D   )
for themselves and on behalf        )
of their minor child, B.A.V.¹       )
                                    )
                                    )
            Plaintiffs,             ) Case No: 08-cv-6294 (CJS-MP)
    vs.                             )
                                    )
PHILIP OVERFIELD, Area Supervisor,  )
GRANT SCRIVEN, Bureau Chief, and    )
GEORGE ALEXANDER, former Chairman of )
the State Board of Parole and       )
ANDREA W. EVANS, Chairwoman of the  )
State Board of Parole and Chief     )
Executive Officer, and the          )
                                    )
NEW YORK STATE DIVISION OF PAROLE   )
Rochester Area Office               )
350 South Avenue                    )
Rochester, New York 14620           )
                                    )
            Defendants.             )
                                    )
```

## REDACTED AMENDED COMPLAINT FOR MONETARY, DECLARATORY AND INJUNCTIVE RELIEF CLASS ACTION

### Introduction

1.    Plaintiffs are fathers and mothers, who bring this action on

      behalf of themselves and their minor children, as well as

---

¹ The original document is filed with the court under seal. In this document plaintiffs' real names have been replaced with pseudonyms.

all other parolees and families similarly situated, in order

to vindicate their fundamental rights protected under the

United States Constitution to maintain a family relation-

ship, and as parents, to engage in the care, custody and

control of their children.

2.  Each of the plaintiff-fathers, John A, Richard B, and James

    C has been or is now on parole.  Defendants imposed an

    unlawful and irrational policy prohibiting these plaintiffs

    from having contact with their own children.

3.  Plaintiffs bring this action in order challenge defendants'

    unlawful parole conditions and policies; to enjoin

    defendants from imposing parole conditions that infringe on

    plaintiffs' constitutional rights to due process and equal

    protection; and for nominal damages in recognition of

    defendants' violations of plaintiffs' constitutional rights.

## JURISDICTION AND VENUE

4.  This court has jurisdiction over all claims against

    defendants in this action pursuant to 28 U.S.C. §1331 and

    §1343(a)(4).

5.  Plaintiffs' request for injunctive and declaratory relief

    are authorized by 28 U.S.C. §§2201 and 2202.

6.  Plaintiffs seek monetary damages, attorneys' fees and costs

    pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988.

7.   Venue in this court is proper under 28 U.S.C. §1391(b).   All
     or a substantial part of the acts giving rise to plaintiffs'
     claims occurred in the Western District of New York.

## II.   PARTIES

### A.   PLAINTIFFS

8.   Plaintiff John A is currently on parole and resides in
     Rochester, New York.   He is the father of E.B., age eight,
     and Q.N., age 12,

9.   Plaintiff Jane A is the mother of these children and
     together with their children, they reside in Rochester, New
     York.

10.  Plaintiffs John A and Jane A are suing as representatives of
     similarly situated families that include one parent on
     parole and who defendants have prohibited from having
     contact with his/her children, notwithstanding the absence
     of any class certification.

11.  Plaintiff James C is currently on parole and resides in
     Rochester, New York in a residence separate and apart from
     his son, B.A.V., age 12.

12.  Plaintiff Maria D is the mother of B.A.V., and they reside
     together in Rochester, New York.

13.  Plaintiffs James C and Maria D are suing as representatives
     of similarly situated families that include one parent on

- 8 -

parole and who defendants have prohibited from having
contact with his/her children, notwithstanding the absence
of any class certification.

14. Plaintiff Richard B was on parole from March 2007 until June
24, 2009.  He is the father of Plaintiffs A.B., age 11,
D.B., age nine, and J.S., age four.

15. Plaintiff Mary B is married to Plaintiff Richard B and
together with their children, they reside in Rochester, New
York.

16. Plaintiffs Richard B and Mary B are suing as representatives
of similarly situated families that include  one parent on
parole who has been prohibited from having contact with
his/her children by defendants, notwithstanding the absence
of any class certification.

17. Plaintiffs E.B. and Q.N., A.B., D.B. and J.S., and B.A.V.,
are all minor children residing in Rochester.

18. This action is brought on behalf of E.B. and Q.N. by and
through their parents and next friend, John A and Jane A; on
behalf of A.B., D.B. and J.S., by and through their parents
and next friend, Richard B and Mary B; and on behalf of
B.A.V., by and through his parents and next friend, James C
and Maria D.

19. Notwithstanding the absence of any class certification, a

proper adversary relationship exists between all the parolee-parents, the wives and mothers of their children, their children, and the defendants to assure proper presentation of the issues.

20. Notwithstanding the absence of any class certification, by virtue of their common experience in committing some prior sexual misconduct and a subsequent criminal offense; followed by defendants' imposition of parole conditions prohibiting these parolee-parents from contact with their own children, plaintiffs are bona fide representatives of all parolees-parents and their families who share the same interests and experience in the criminal justice system.

## B. DEFENDANTS

21. Defendant New York State Division of Parole is part of the State's Executive Department and is responsible for the community supervision and reintegration of offenders released from prison.

22. Defendant Division of Parole has developed specialized units specifically for the supervision of sex offenders called Special Offender Units.

23. The Division of Parole's Special Offender Units are staffed by specially trained parole officers and operate throughout the state.

24.  Until mid-December 2008, Defendant George Alexander was the
     Chairman of the State Board of Parole and Chief Executive
     Officer of the Division of Parole.

25.  Defendant Andrea W. Evans is Chairwoman of the State Board
     of Parole and Chief Executive Officer of the Division of
     Parole.

26.  At all relevant times herein, Defendants George Alexander
     and Andrea W. Evans were acting within the scope of their
     authority and under color of state law.

27.  In this lawsuit, Defendants Alexander and Evans are sued in
     their individual and official capacities.

28.  Defendant Philip Overfield is Area Supervisor for the
     Division of Parole in MonB County, and supervises parole
     officers assigned to Plaintiffs John A and James C.

29.  At all relevant times herein, Defendant Phillip Overfield
     was acting under color of state law and acting within the
     scope of his authority.

30.  In this lawsuit, Defendant Phillip Overfield is sued in his
     individual and official capacity.

31.  Defendant Grant Scriven is a Bureau Chief for the Division
     of Parole and the supervisor of parole officers assigned to
     Plaintiff Richard B.

32.  At all relevant times herein, Defendant Grant Scriven was

acting under color of state law and acting within the scope
of his authority.

33. In this lawsuit, Defendant Grant Scriven is sued in his
individual and official capacity.

### III. CLASS ACTION

34. The named individual plaintiffs bring this suit as a class
action on their own behalf and on behalf of all other
persons similarly situated.

35. The class is defined as all parents who are now or will be
in the future on parole for a criminal offense unrelated to
sexual misconduct, and who are prohibited by defendants from
contact with their children, when both parents of these
children support parental contact.

36. As explained in the following paragraphs, this action meets
the requirements of Rule 23(a) of the Federal Rules of Civil
Procedure and is a proper class action under Rule 23(b)(2).

37. Upon information and belief, the class as defined in
paragraph comprises hundreds of persons.  Accordingly, the
class members are so numerous that joinder is impractical.

38. There exist questions of law and fact common to members of
the plaintiff class.  The individually named plaintiffs are
or were on parole and were prohibited by defendants from
with their own children.

39.  Defendants have unlawfully denied plaintiffs their
     fundamental rights protected under the United States
     Constitution to maintain a family relationship, and as
     parents, to engage in the care, custody and control of their
     children.

40.  Similar or identical harm has been inflicted upon all
     members of the plaintiff class.  Thus defendants'
     unconstitutional policies and/or practices affects all
     proposed class members and establishes common questions of
     law and fact.

41.  The claims of the individually named plaintiffs are typical
     of the claims of the member class.  Each individual
     plaintiff would have benefitted from procedural safeguards
     and the substantive and due process protections sought in
     this suit.

42.  Plaintiffs seek prospective injunctive relief on behalf of
     all class members.  Plaintiffs seek nominal damages only for
     the named plaintiffs and not on behalf of any class members.

43.  The individually named plaintiffs will fairly and adequately
     protect the interests of the class.  Plaintiffs have no
     interests which are antithetical to the interests of the
     class.

44.  Counsel for the plaintiffs have extensive experience in

litigating class actions and public interest cases involving federal statutes and civil rights claims.

45. Defendants are refusing to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the class as a whole. Fed. R. Civ. Procedure 23(b)(2).

# IV.  FACTS

## A. DEFENDANTS' "NO CONTACT" POLICY APPLIED TO PAROLEES' CHILDREN

46. Plaintiffs John A, Richard B, and James C have been or are currently on parole and supervised by parole officers who are members of Defendants' Special Offender Unit(s).

47. In approximately 2005 or 2006, defendants adopted and/or implemented a new policy, pattern or practice (hereinafter "policy") of imposing special parole conditions on all parolees who had previously committed some type or form of sexual misconduct earlier in their lives.

48. Many of these special sex offender parole conditions are designed to proscribe deviant sexual behavior.

49. Under defendants' policy, however, defendants now impose these special conditions on all parolees who had previously committed any type or form of sexual misconduct, regardless of whether these parolees have ever engaged in deviant sexual behavior.

- 14 -

50.  Under defendants' policy, their special sex offender
     conditions are routinely imposed upon this group of parolees
     and include a requirement that a parolee have "no contact
     with any person under the age of eighteen without the
     written permission" of their parole officer.

51.  In imposing special sex offender conditions on plaintiffs,
     defendants do not consider less restrictive alternatives.

52.  In imposing special sex offender conditions on plaintiffs,
     defendants apply their "no contact" prohibition without
     distinguishing between a plaintiff's own children and other
     unrelated minors.

53.  According to Defendants' Guidelines for the Supervision of Sex
     Offenders, produced by the Division of Parole, this special
     sex offender parole condition relates to pedophile or incest
     offenders.

54.  Defendants uniformly impose their special sex offender
     conditions on parolees who have committed or are alleged to
     have committed some offense involving sexual misconduct,
     without regard to the specific victim; or the severity of
     the offense; or the number of years that have passed since
     the offense was committed.

55.  Defendants' special sex offender parole condition
     prohibiting parolees from "contact with any person under the

age of 18 without the written permission of the parole

officer" has been interpreted by defendants to prohibit

parolees from living with, visiting, talking, or even

carrying pictures of their own minor children in their

wallets.

56. Plaintiffs John A, Richard B, and James C pose no risk to

their own children or to other children.

57. But for defendants' "no contact policy" these plaintiffs

would or would have lived with their families and/or visited

with their children while on parole.

58. Defendants have assigned and required parolees to see

specialists for evaluation and treatment of their purported

sexual deviancy.

59. In response to these specialist evaluations, defendants have

either ignored the results or refused to reconsider their

"no contact" policy as applied to plaintiffs.

60. Although Plaintiffs John A, James C, and Richard B each

approached their parole officers and requested permission to

have contact with their own children, defendants orally

denied each plaintiff's request on multiple occasions.

61. Soon after this suit was filed, however, in September 2008,

defendants decided to allow Plaintiff John A to reside with

his wife and children while on parole.

- 16 -

62. When considering Plaintiffs John A, James C, and Richard B's requests to have contact with their children, defendants did not utilize any known administrative procedure for reviewing this parole condition.

63. After denying Plaintiffs John A, James C, and Richard B's requests to have contact with their children, defendants did not provide plaintiffs with a written explanation or determination for their decisions.

64. After denying plaintiffs' requests to live with or visit their minor children, defendants did not provide Plaintiffs John A, James C, and Richard B with any procedural information about challenging defendants' policy.

### B.   PLAINTIFFS JOHN A, JANE A AND THEIR CHILDREN, E.B. and Q.N.

65. Plaintiff John A is the father of his daughter, Plaintiff E.B., age eight.

66. Plaintiff John A is the psychological father and only father known to Plaintiff Q.N., age 12, who is Plaintiff Jane A's biological son.

67. Plaintiffs John A, Jane A, E.B., and Q.N. have associated as a family since 1995.

68. When he was 12 years old in 1987, Plaintiff John A was directed by his mother to plead guilty to a charge of sex

abuse in the MonB County Family Court.

69. All records of Plaintiff John A's juvenile delinquency case have been sealed pursuant to Family Court Act §354.2 and are considered confidential.

70. Plaintiff John A has never been charged or convicted of any other sexual offense and none of his other criminal convictions involve children or sexual misconduct.

71. In November 2000, John A pled guilty to a felony. When he was placed on parole in June 2003, Plaintiff John A was permitted unconditional visitation with his baby daughter, E.B..

72. In April 2005, Plaintiff John A pled guilty to Attempted Criminal Possession of Controlled Substance in the Fifth Degree with Intent to Sell. He was released from prison in November 2007, and is on parole until June 11, 2010.

73. Soon after his release from prison, on November 13, 2007, Plaintiff John A met with his parole officer, John Baldassare, a member of defendants' Special Offender Unit.

74. At this meeting and pursuant to defendants' "no contact" policy, plaintiff was instructed that he could no longer have any contact with his daughter Plaintiff E.B. or Q.N., because these children are younger than 18 years of age.

75. At this meeting, defendants' further directed that Plaintiff

- 18 -

John A could not even have supervised visitation with his daughter E.B., or even have photographs of his 8-year-old daughter.

76. Plaintiff John A was warned that if he failed to comply with these parole conditions, his parole would be violated and he would be returned to state prison.

77. Prior to the November 13, 2007 meeting, defendants did not give Plaintiff John A any written notice regarding their intent to impose defendants' special "no contact" parole conditions.

78. As part of defendants' "no contact policy", defendants required Plaintiff John A to obtain sex offender evaluation and treatment from the Evelyn Branden Treatment Center.

79. Staff at the Evelyn Branden Treatment Center determined that no sex offender treatment was necessary for Plaintiff John A.

80. Defendants agreed with this recommendation and were unable to provide any other information about Plaintiff John A that would warrant the need for treatment.

81. Defendants have never provided Plaintiff John A with the factual basis for defendants' imposition of their "no contact" parole conditions.

82. Defendants never provided Plaintiff John A with information

regarding how any of his past conduct is related to the "no contact" parole conditions imposed.

83. Although Plaintiff John A objected to these "no contact" parole conditions, defendants never provided Plaintiff John A with information regarding any administrative process for review of defendants' "no contact" decision.

84. From November 13, 2007 until September 2008, Plaintiff John A was not permitted by defendants to have any contact with his daughter, E.B., or his son, Q.N.

85. Defendants maintain authority to reimpose their "no contact" special parole conditions at any time, prohibiting Plaintiff John A from having any contact with his daughter until his parole supervision ends on June 11, 2010.

86. Plaintiff Jane A, the mother of E.B. and Q.N., is a low-income working mother and faces many challenges in raising and providing for her two young children.

87. As a mother caring and providing for two children, defendants' "no contact" parole conditions deprived Plaintiff Jane A of desperately needed parental assistance from the children's father, Plaintiff John A.

88. For Plaintiffs E.B. and Q.N., defendants' "no contact" parole conditions deprived these children of desperately needed parental love and affection, caring and guidance from

their father.

### C.  **PLAINTIFFS RICHARD B, MARY B and THEIR CHILDREN A.B., D.B., and J.S.**

89.  Richard B and Mary B were married in October 2001 and have three children.

90.  When he was 17 years old in 1992, Plaintiff Richard B was arrested and later convicted of Third Degree Rape involving a 16-year-old girl.

91.  Plaintiff Richard B has never been charged or convicted of any other sexual offense and none of his other criminal convictions involve children or sexual misconduct.

92.  In October 2000, Plaintiff Richard B was convicted of a felony; he was released on parole in December 2003 without any special sex offender special conditions, and he returned to his home where he lived with his wife and children.

93.  In March 2006, Plaintiff Richard B was re-incarcerated for violating a parole curfew condition and he was again released from prison in March 2007.

94.  Soon after he was released from prison, on March 28, 2007, Plaintiff Richard B met with his parole officer, John Baldassare, a member of defendants' Special Offender Unit.

95.  Pursuant to defendants' "no contact" policy, plaintiff was instructed by his parole officer that he could no longer

have any contact with his two children, Plaintiffs D.B. or
J.S. or with his stepdaughter, A.B., because they were all
younger than 18 years of age.

96. At this meeting, defendants' further directed Plaintiff
Richard B that plaintiff could not even have supervised
visitation with his children, or even have photographs of
his children.

97. Defendants warned Plaintiff Richard B that if he failed to
comply with these parole conditions, his parole would be
violated and he would be returned to state prison.

98. Prior to the March 28, 2007 meeting, defendants did not give
Plaintiff Richard B any written notice regarding their
intent to impose their special "no contact" parole
conditions.

99. Defendants have never provided Plaintiff Richard B with the
factual basis for defendants' imposition of their "no
contact" parole conditions.

100. Defendants have never provided Plaintiff Richard B with
information regarding how any of his past conduct is related
to the "no contact" parole conditions imposed.

101. Although Plaintiff Richard B objected to these "no contact"
parole conditions, defendants have never provided Plaintiff
James C with information regarding any administrative

process for review of defendants' decision.

102. In September 2007, Plaintiff Richard B violated a parole condition and was sent to Willard Drug Treatment Facility for three months.

103. During this time, Plaintiff Richard B contacted defendants seeking to have the "no contact" special parole conditions removed when he was released from Willard.

104. Generally, parole conditions and restrictions must somehow be reasonably or "rationally related" to "past conduct" or "prior crimes", and "designed to reduce opportunities" for recidivist behavior.

105. In a letter dated January 16, 2008, Plaintiff Richard B explained to defendants that there was no possible relationship between his life and/or past criminal behavior and the imposition of the Division of Parole's "no contact" parole conditions.

106. Defendants ignored plaintiffs' letter and reimposed the same special "no contact" sex offender parole conditions upon Plaintiff Richard B when he was released on January 28, 2008.

107. Although Plaintiff Richard B had previously and successfully completed sex offender treatment in March 1998, as a condition of parole, defendants also required plaintiff to

- 23 -

participate in another therapy program for sex offenders.

108. During an unannounced home visit to Mr. B's residence in
     Walcott, New York, Parole Officer Timothy Casselman "caught"
     Plaintiff Richard B with his wife, Mary  B "in the presence
     of his two young children" on November 16, 2008.

109. Defendants violated Plaintiff Richard B for failing to
     comply with two parole conditions: (1) being "in contact
     with [two] children both under the age of 18", and (2) for
     having "contact with children under the age of 18 without
     written permission of the parole officer."

110. While the parole revocation hearing was pending, Defendant B
     was incarcerated in the Wayne County Jail.

111. During the time he was incarcerated in the Wayne County
     Jail, Plaintiff Richard B was permitted to see, touch, and
     communicate with his wife and children during normal public
     visiting hours.

112. Plaintiff Richard B was restored to parole by an
     administrative law judge on January 20, 2009, however,
     defendants continued to refuse to allow plaintiff contact
     with his children until plaintiff completed his term of
     parole on July 25, 2009.

113. Plaintiff Mary B is a working mother and faces many
     challenges in raising and providing for her young children.

114. The "no contact" special parole conditions imposed by
     defendants on Plaintiff Richard B deprived Plaintiff Mary  B
     of desperately needed parental assistance in caring and
     providing for their children and raising a family.

115. For Plaintiffs E.B., D.B. and J.S., defendants' "no contact"
     parole conditions deprived these children of desperately
     needed parental love and affection, caring and guidance from
     their father.

### D.  PLAINTIFFS JAMES C, MARIA D AND THEIR CHILD, B.A.V.

116. Plaintiff James C has a 14-year-old son, B.A.V., who lives
     with his mother, Maria D.

117. In 1993 when he was 25 years old, Plaintiff James C was
     convicted of a misdemeanor, Sexual Misconduct, for engaging
     in consensual sex with a female under the age of seventeen.

118. Plaintiff James C has never been charged or convicted of any
     other sexual offense and none of his other criminal
     convictions involve children or sexual misconduct.

119. In 1993 and 1995 Plaintiff James C was convicted of a
     felony, Criminal Possession of a Controlled Substance.

120. During this time, Plaintiff James C obtained a Monroe County
     Family Court Order requiring that he be permitted contact
     with his son while incarcerated, and plaintiff regularly

exercised his right to have visitation with his son, B.A.V..

121. On November 15, 2007, Plaintiff James C met with his parole officer, a member of Defendants' Special Offender Unit.

122. Pursuant to defendants' "no contact" policy, plaintiff was instructed that he could no longer have any contact with his son, B.A.V., because his son is younger than 18 years of age.

123. At this meeting, defendants further directed Plaintiff James C that he could not have any visitation with his child and that he could not contact his son in any manner, whether by mail or telephone.

124. Defendants warned Plaintiff James C that if he failed to comply with these parole conditions, his parole would be violated and he would be returned to state prison.

125. Prior to the November 15, 2007 meeting, defendants did not give Plaintiff James C any written notice regarding their intent to impose their special sex offender "no contact" parole conditions.

126. Defendants have never provided Plaintiff James C with the factual basis for defendants' imposition of their "no contact" parole conditions.

127. Defendants have never provided Plaintiff James C with information regarding how any of his past conduct is related

to the "no contact" parole conditions imposed.

128. Although Plaintiff James C objected to these "no contact"
     parole conditions, defendants have never provided Plaintiff
     James C with information regarding any administrative
     process for review of defendants' "no contact" decision.

129. As a single mother, caring and providing for her young son,
     defendants' "no contact" parole conditions deprive Plaintiff
     Maria D of desperately needed parental assistance from their
     son's father, Plaintiff James C.

130.  For Plaintiff B.A.V., defendants' "no contact" parole
     conditions deprive him of desperately needed parental love
     and affection, caring and guidance from his father.

## V.   FIRST CAUSE OF ACTION
## VIOLATIONS OF SUBSTANTIVE DUE PROCESS

131. The Fourteenth Amendment to the U.S. Constitution provides
     that no "State shall deprive any person of life, liberty, or
     property, without the due process of law."

132. Plaintiffs John A, Richard B, and James C are each parents
     of children who are younger than 18 years old, and
     plaintiffs have fundamental liberty interests in the care,
     custody, and control of their children, protected by the
     Fourteenth Amendment.

133. Defendants' "no contact" policy substantially infringes upon

plaintiffs' fundamental liberty interests by prohibiting plaintiffs from being parents: living with and raising their children.

134. Plaintiffs E.B. and Q.N.; A.B., D.B. and J.S.; and B.A.V. are all minor children, and each have fundamental liberty interests protected by the Fourteenth Amendment in the care and companionship provided by their parolee parent.

135. Defendants' "no contact" policy" substantially infringes upon each child's protected fundamental liberty interests by preventing them from receiving care and companionship from their father.

136. Defendants' "no contact" policy" substantially infringed upon the Fourteenth Amendment fundamental liberty interests of Plaintiff Jane A by denying her the assistance of Parolee John A, the father of her children, in the care, custody, companionship, and management of their young sons.

137. Defendants' "no contact" policy" substantially infringed upon Plaintiff Mary B's marital relationship with her husband, Parolee Richard B, and her right to remain together with her children as a family unit, fundamental liberty interests protected by the Fourteenth Amendment.

138. Defendants' "no contact" policy" substantially infringes upon the Fourteenth Amendment fundamental liberty interests

of Plaintiff Maria D  by denying her the assistance of
Parolee James C, the father of their child in the care,
custody, companionship, and management of their young son.

139. Defendants' "no contact" policy substantially interferes
with each plaintiffs' substantive due process rights
protected by the Fourteenth Amendment.

140. Defendants' "no contact" policy deprives each plaintiff of
fundamental liberty interests without any compelling state
interest narrowly tailored to accomplish defendants'
purported public purpose of "supervising parolees to the
successful completion of their sentence."

141.  Plaintiffs have each suffered nominal damages as a result
of defendants' deprivation of plaintiffs' constitutional
rights.

## VI.   SECOND CAUSE OF ACTION
### VIOLATIONS OF PROCEDURAL DUE PROCESS: NO NOTICE AND
### OPPORTUNITY TO CHALLENGE DEFENDANTS' SPECIAL PAROLE CONDITIONS

142. Plaintiffs John A, Richard B, and James C each have a
fundamental liberty interest protected by the Fourteenth
Amendment in establishing a home, sustaining a family unit,
and as parents and fathers, bringing up their children.

143. Defendants have imposed their "no contact" policy and
special sex offender parole conditions upon these plaintiffs
without adequate written notice regarding defendants' intent

to impose these special parole conditions.

144. Defendants have imposed their "no contact" policy and
     special sex offender conditions of parole upon these
     plaintiffs without providing plaintiffs with the factual
     basis for these parole conditions.

145. Defendants imposed their "no contact" policy and special sex
     offender conditions of parole upon these plaintiffs without
     providing plaintiffs with information regarding how any of
     their past conduct is related to the special parole
     conditions.

146. Defendants have imposed their "no contact" policy and
     special sex offender conditions of parole upon each of these
     plaintiffs without providing plaintiffs with information
     regarding any administrative process for review of
     defendants' decision.

147. Due Process requires timely and adequate notice detailing
     defendants' reasons for imposing their "no contact" policy
     and special sex offender parole conditions, as well an
     opportunity for each of these plaintiffs to challenge the
     imposition of these special conditions.

148. Defendants' interference with the liberty interests of
     Plaintiffs John A, Richard B, and James C without adequate
     notice and opportunity to challenge defendants' policy

- 30 -

creates a constitutionally intolerable risk of an erroneous
deprivation of plaintiffs' fundamental rights.

149. Defendants have no legitimate governmental interest which
outweighs the benefits of providing plaintiffs with adequate
procedural safeguards of notice and opportunity, thereby
reducing risks of defendants' erroneous deprivation of
plaintiffs' liberty interests.

150. Defendants' failure to provide plaintiffs with procedural
safeguards such as written notice and opportunity to
challenge defendants' imposition of their "no contact"
policy and special sex offender conditions unlawfully
restricts plaintiff's fundamental liberty interests.

151. Defendants' failure to provide plaintiffs with procedural
safeguards such as written notice and opportunity to
challenge defendants' imposition of their "no contact"
policy and special sex offender conditions is a violation of
the Due Process Clause of the Fourteenth Amendment.

152. Plaintiffs John A, Richard B, and James C have each suffered
nominal damages as a result of defendants' deprivation of
plaintiffs' constitutional rights.

## VII. THIRD CAUSE OF ACTION
### VIOLATIONS OF PROCEDURAL DUE PROCESS:
### FAILURE OF AGENCY TO REVIEW SPECIAL PAROLE CONDITIONS

153. Plaintiffs John A, Richard B, and James C each challenged

and objected to defendants' deprivation of their fundamental liberty interests protected by the Fourteenth Amendment when defendants imposed their "no contact" policy and special sex offender parole conditions.

154. Defendants failed to respond to each plaintiff's objections to defendants' imposition of their "no contact" policy and special sex offender parole conditions.

155. As a condition of parole, defendants required Plaintiff John A to attend the Evelyn Branden Treatment Center for sex offender evaluation and treatment.

156. On January 30, 2007, the Evelyn Brandon Treatment Center staff recommended that Plaintiff John A not be admitted for sex offender treatment because "the behavior happened almost 20 years ago when [Plaintiff John A] was 12".

157. Defendants agreed with this recommendation, and were unable to provide the Evelyn Brandon Treatment Center with any additional information about Plaintiff John A that would warrant the need for such treatment.

158. After receipt of this information from the Evelyn Brandon Treatment Center, defendants waited over one and one-half years to remove their no contact with children parole conditions.

159. With respect to Plaintiff Richard B, during the summer and

fall of 2008 defendants agreed to permit plaintiff to be evaluated by Carl Christensen, a noted sex offender treatment specialist.

160. Based on a series of tests, evaluations, and interviews Mr. Christensen concluded on October 10, 2008 that Plaintiff Richard B was not a sexual risk to his children and that defendants' parole condition prohibiting plaintiff from contact with his children was "unnecessary".

161. Defendants received a copy of Christensen's evaluation on October 23, 2008 but still refused to remove the "no contact with children" prohibition for the entire remaining time Plaintiff James C's parole.

162. With respect to Plaintiff James C, in a letter addressed to defendants dated July 23, 2008 James A, primary therapist at the Evelyn Brandon Health Center, informed defendants that Plaintiff James C had successfully completed the Unity Sexual Behaviors Clinic.

163. Despite receipt of this letter some 15 months ago, defendants have still refused to permit Plaintiff James C to have any contact with his son.

164. Defendants violated their affirmative duty to promptly remove the special sex offender parole conditions (including defendants' "no contact policy") for Plaintiffs A, B, and

C.

165. Defendants' failure to establish an adequate procedure for agency review of their special sex offender parole conditions, including defendants' "no contact policy", constitutes a violation of plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment.

166. Defendants have no legitimate governmental interest which outweighs the benefits of providing an adequate agency review procedure, thereby reducing the risk of defendants' erroneous deprivations of plaintiffs' liberty interests.

167. Defendants' failure to provide Plaintiffs John A, Richard B, and James C with an adequate agency review procedure for continuing imposition of defendants' "no contact" policy and special sex offender conditions substantially restrict plaintiffs' fundamental liberty interests.

168. Defendants' failure to provide these plaintiffs with an adequate agency review procedure for continuing imposition of defendants' "no contact" policy and special sex offender conditions is a violation of the Due Process Clause of the Fourteenth Amendment.

169. Plaintiffs John A, Richard B, and James C have each suffered nominal damages as a result of defendants' deprivation of plaintiffs' constitutional rights.

- 34 -

## VIII. FOURTH CAUSE OF ACTION
## VIOLATIONS OF THE EQUAL PROTECTION CLAUSE

170. The Equal Protection Clause of the Fourteenth Amendment to
the United States Constitution provides that the State shall
not "deny to any person within its jurisdiction the equal
protection of the laws."

171. Fundamental rights protected under the Equal Protection
Clause include the right to marry; the right to the
companionship of one's child; the right to privacy including
a parent's right to make decisions regarding their
children's care, establish a home, and direct the upbringing
of one's children.

172. Defendants' classification of Plaintiffs John A, Richard B,
and James C as sex offenders and imposition of defendants
"no contact" policy infringes on all plaintiffs' fundamental
rights protected under the Equal Protection Clause.

173. Defendants' classification of Plaintiffs John A, Richard B,
and James C as sex offenders and prohibiting them from
having contact with their own children is arbitrary,
unreasonable and unrelated to the object of parole, such
that all persons in similar circumstance are not treated
alike.

174. In imposing their "no contact" policy upon plaintiffs,

defendants lack any purpose narrowly tailored and necessary
to promote or further a compelling or overriding
governmental interest.

175. Defendants' "no contact" policy and special sex offender
conditions unlawfully infringe upon plaintiffs' fundamental
rights and constitute a violation of the Equal Protection
Clause of the Fourteenth Amendment.

176. Each plaintiff has suffered nominal damages as a result of
defendants' deprivation of plaintiffs' constitutional
rights.

WHEREFORE, plaintiffs respectfully request this honorable
court:

a. Assume jurisdiction of this case; and

b. Declare that the defendants violated each of the
plaintiffs' Fourteenth Amendment substantive due process
rights as described in Plaintiffs' First Cause of Action;
enjoin defendants from all future violations; and award
nominal damages to the named Plaintiffs against defendants
individually and jointly; and

c. Declare that the defendants violated Plaintiffs John A,
Richard B, and James C's procedural due process rights
protected by the Fourteenth Amendment as described in
Plaintiffs' Second Cause of Action; enjoin defendants from

all future violations; and award nominal damages to named
plaintiffs against defendants individually and jointly; and

d.   Declare that the defendants violated Plaintiffs John A,
Richard B, and James C's Fourteenth Amendment procedural due
process rights as described in  Plaintiffs' Third Cause of
Action; enjoin defendants from all future violations; and
award nominal damages to the named plaintiffs against
defendants individually and jointly; and

e.   Declare that the defendants violated each of the
plaintiffs' Fourteenth Amendment rights to equal protection
as described in  Plaintiffs' Fourth Cause of Action; enjoin
defendants from all future violations; and award nominal
damages to the named plaintiffs against defendants
individually and jointly; and

f.   Retain jurisdiction of this matter until such time as
defendants have fully complied with the provisions of the
civil rights laws of the United States and United States
Constitution, and for three years thereafter to ensure
continued compliance with the law; and

g. Award plaintiffs attorneys' fees and costs under 42
U.S.C. §1988; and

h. Grant plaintiffs any and all other relief this Court may
deem proper.

- 37 -

Respectfully Submitted,


Empire Justice Center
1 West Main Street, Suite 200
Rochester, NY 14614
Telephone:  (585) 454-4060


By: /s/Peter O'Brian Dellinger
    Peter O'Brian Dellinger, Esq.
    Bryan D. Hetherington, Esq.
    Attorneys for Plaintiffs
    pdellinger@empirejustice.org


Dated:    November 10, 2009

## CERTIFICATE OF SERVICE

I hereby certify that I filed  a copy of the Plaintiffs' Redacted Amended Class Action Complaint for Declaratory, Monetary and Injunctive Relief through the CF/ECF Filing system and sent a copy by First Class Mail, postage prepaid to Debra Martin, Assistant Attorney General, New York State Attorney General's Office, 144 Exchange Boulevard, Rochester, New York 14614-2176, attorneys for the defendants, on the ___ day of April 2013.

/s/Peter O'Brian Dellinger
Peter O'Brian Dellinger